# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CHRIS COSSE** | **CIVIL ACTION** |
| **VERSUS** | **NO.  08-1214** |
| **BURL CAIN, WARDEN**<br>**LOUISIANA STATE PENITENTIARY** | **SECTION "J"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and the petition **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.     FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Chris Cosse, is incarcerated in the Louisiana State Penitentiary in

Angola, Louisiana.[2]  On July 10, 1997, Cosse was indicted by a grand jury in Orleans

Parish for the first degree murder of James Reed.[3]  The Louisiana Fourth Circuit Court

of Appeal summarized the facts of the case as follows:

> On May 19, 1997, at about 6:00 a.m., Sharon Bowlston[4] responded to a knock on the front door of the second floor apartment she shared with her two children and her fiancé, James Reed.  She saw Chris Cosse, a man she had met on three or four prior occasions, and knew that he was Reed's friend.  When she saw him through the peephole, she went to get Reed.  She returned to her bedroom to finish dressing for work.  A few minutes later, Bowlston went back toward the door to check on Reed.  She saw him in the hallway with Cosse holding a gun to his neck.  Cosse told her "Bitch, back off."  She backed into her bedroom.
>
> Cosse then made Reed lie on the floor at the foot of the bed. Cosse held the gun on Reed most of the time, but would also point it at Bowlston when she would move or say anything.  He told Bowlston to tie Reed's hands with her sock.  She tried, but told Cosse that the socks would not fit.  He then told her to get one of the scarves she used for her hair to tie Reed's hands.  Bowlston went to her dresser and got a scarf.  She tied Reed's hands behind his back.  She intentionally tied them loosely, so that he could break free if Cosse could be distracted.
>
> During this time, Cosse accused Reed of "playing" with him. He also demanded money from Reed. Bowlston told Cosse there was money in the dresser and asked him, if she gave him the money would he leave and not hurt anyone.  She then took almost one hundred dollars out of a dresser drawer and handed it to Cosse.  Cosse took the money, then shot Reed in the head.  He ordered Bowlston to get onto her knees, which she did.  Then he ordered her to lie down.  While she was getting down, Cosse shot her in the jaw.  Bowlston got as far under the bed as she could, then played dead. Cosse then fled.

---

[2]Rec. Doc. No. 1.

[3]St. Rec. Vol. 3 of 7, Indictment, 7/10/97.

[4]While the names of Ms. Bowlston and her two children were spelled phonetically in the trial transcript, this opinion uses the spellings indicated in their signatures on documents in the record.

While Cosse was holding the gun on Reed and Bowlston, Bowlston's two children, ten-year-old Janai Bowlston and fifteen-year-old Joseph Dedmond, observed and heard some of the events. Both children testified that they recognized the man with the gun as "Chris," a friend of Reed's whom they had met before. They both testified that the lighting was good, and "Chris" was wearing no hat or mask on the morning of the shooting.

Janai testified that she saw Cosse with a gun pointed at her mother. When Cosse saw her, he pointed the gun at her and told her to "get back in the f---ing room." On her way back to her room, Janai heard a gunshot.

Joseph testified that he woke up when he heard his mother scream in the hallway. He further testified that he saw Cosse pointing the gun at Reed and Bowlston. He testified that he did not call for help from his room because his phone made a noise which Cosse would have heard. He was peeking into his mother's bedroom when he heard his mother offer to give Cosse money if he would go away and not hurt anyone. When his mother walked to the dresser to get the money, Joseph went back to his room. He heard water running and went back to the hallway outside of his mother's bedroom. He saw Reed lying on the floor. He heard Cosse say the "B" word, then saw him shoot Reed. At that point, Joseph ran out the front door to get help. He heard a second shot after he ran out. Joseph found a friend on the first floor who ran back with him to help Reed.

Bowlston . . . managed to get to a neighbor, though she was bleeding badly from the mouth and could barely speak. She called the police herself, but told the police operator that she did not know the name of the shooter, because she was afraid for herself and her children. She then tried to calm Joseph and keep him away from Reed. Eventually, she passed out.

Officer Keith Joseph was the first to arrive at the scene. He found one victim, Bowlston, lying by the front door. He found the second victim, Reed, lying on the floor near the foot of the bed. Both victims appeared to be bleeding from gunshot wounds to the head. Officer Joseph recognized Bowlston, as he used to live near one of her relatives. Bowlston could not speak, but communicated with Officer Joseph by shaking her head. She indicated to him that she knew who shot her. She also indicated that others were in the residence. Officer Joseph called EMS to transport Reed and Bowlston to the hospital. He did not see Janai, but did see Joseph and tried to calm him down.

Officer Tyrone Robinson was another officer who arrived on the scene shortly after the incident. Officer Robinson also spoke with Joseph and attempted to calm him. Through Joseph he developed the name of "Chris." The officers developed the last name, "Cosse," through a person who would not give his or her own name. The officers also got a physical and clothing description of the perpetrator.

Detectives George Waguespack and Donald Bass did follow-up investigation. After the victims were transported to the hospital, Det. Waguespack took Joseph to the district station and presented him with a lineup of six individual photographs.

Joseph seemed upset, nervous and scared to the detective, and did not identify anyone.  A few hours later, Det. Bass showed Joseph another set of photographs, including one of Chris Cosse from Jefferson Parish records, but Joseph again declined to identify anyone, saying the photos were bad.  The next morning, Det. Waguespack and Det. Bass met with Joseph at the hospital, before he visited his mother.  At that time, he selected a picture of Chris Cosse as the perpetrator.

The next day, Bowlston identified Cosse from the same photographic lineup as Joseph.  Because Bowlston was intubated and her jaw was wired shut at the time, she nodded her head to indicate that she recognized the perpetrator in the lineup.  However, the officers and Bowlston all testified that she signed the back of the lineup herself and identified Cosse as the perpetrator.  A few days later, Bowlston's sister took Janai to the district station where she identified Cosse as the perpetrator from yet another compilation of photographs.

The witness noted that, after the shooting, Joseph went to stay with his father's sister while Janai went to stay with her mother's sister.  Bowlston was in the hospital, still unable to speak.  None of the family members had the opportunity to speak to the others prior to their individual identification procedures.

The physician who performed the autopsy testified that Reed died of two gunshot wounds to his head.  Toxicology tests revealed that Reed had no discernible illegal drugs in his system at the time of death.  The lack of gunpowder burns near the entrance wounds indicated that the gun was fired from at least two and one-half to three feet away from the victim.

Following Joseph's identification of Cosse on the day after the shooting, Dets. Waguespack and Bass applied for an arrest warrant for Cosse and a search warrant for his apartment.  The officers were notified that Cosse had been arrested on the warrant and was being held in the Port Sulphur jail.  They proceeded to Port Sulphur and transported Cosse back to Orleans Parish.  Although they were told that Cosse had been advised of his Miranda rights, the officers again advised Cosse of his rights as they put him in the car to return to Orleans Parish.  While in the police car, Cosse told the officers that he knew why they arrested him, but that he did not know anything about it.  He told them that he saw two masked men leaving the apartment when he got there.  He further told them that, when he went inside and saw what happened, he ran away.

At trial, Cosse took the stand and admitted several prior convictions, including two burglaries, an attempted burglary, and two counts of armed robbery.  He admitted pleading guilty to the armed robberies, but testified that he did not use a gun.  He insisted that he had never owned or used a gun.

Cosse testified that he and Reed became friends when they served time together.  He further testified that he sold heroin for Reed.  He testified that he would pick up drugs from Reed at the apartment Reed shared with Bowlston.  He testified that he was on his way to get more drugs to sell on the morning of the murder.  He maintained his previous story, that he saw two masked men leaving the apartment

4

as he entered.  He testified that he was afraid to stay and help his friend because no one would believe him due to his record.

Cosse further testified that he ran away to relatives in the country because he was afraid people were after him.  Cosse testified that he told his young cousin what he had seen.  She alerted relatives who were police officers.  Those officers then came with other officers and arrested him.

Bowlston testified in rebuttal that Reed worked as an assistant to a mechanic.  She acknowledged that Reed had been in prison for shoplifting.  She testified that Reed did not use drugs or sell drugs.  She further testified that she had seen no drugs in her apartment, and Reed never told her to avoid looking in any particular places there.

(footnote in original) <u>State v. Cosse</u>, 778 So.2d 111 (La. App. 4th Cir. 2001) (Table); State Record Volume 5 of 7, Louisiana Fourth Circuit Court of Appeal Opinion, 2000-KA-0304, pp. 1-6, January 3, 2001.

Cosse was tried before a jury on May 19 through 21, 1998, and he was found guilty as charged.[5]  After further evidence and deliberation, on May 22, 1998, the jury also determined that Cosse should be sentenced to life imprisonment.[6]  On June 15, 1998, the state trial court sentenced Cosse to life in prison without benefit of parole, probation or suspension of sentence.[7]

_____

[5]St. Rec. Vol. 3 of 5, Trial Minutes, 5/19/98-5/21/98; Jury Verdict, 5/21/98; St. Rec. Vol. 5 of 7, Trial Transcript, Vol. 1, 5/20-21/98; Trial Transcript, Vol. 2, 5/20-21/98.

[6]St. Rec. Vol. 3 of 5, Jury Verdict, 5/22/98.

[7]St. Rec. Vol. 3 of 5, Sentencing Minutes, 6/15/98; Minute Entry, 8/3/98 (clarifying that the sentence was without benefits); St. Rec. Vol. 5 of 7, Sentencing Transcript, 6/15/98.

On direct appeal, Cosse's counsel raised two grounds for relief:[8] (1) The state trial court erred in denying the motion to suppress the identifications. (2) He is entitled to a new trial because a portion of Bowlston's testimony was not recorded or transcribed and therefore was not reviewable on appeal.  On January 3, 2001, the Louisiana Fourth Circuit affirmed the conviction, finding no merit to Cosse's claims.[9]

Cosse filed a pro se writ application with the Louisiana Supreme Court raising the same grounds for relief.[10]  On January 4, 2002, the Louisiana Supreme Court denied the writ application without reasons.[11]

Cosse's conviction became final 90 days later, on April 4, 2002, when he did not file a writ application in the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. S. Ct. Rule 13(1).

---

[8]St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2000-KA-0304, pp. 6, 9, 1/3/01.

[9]Id.

[10]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 01-KO-0523, 2/28/01 (postmarked 1/19/01).

[11]State v. Cosse, 805 So.2d 1187 (La. 2002); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2001-KO-0139, 1/4/02.

Cosse alleges that he filed an application for post-conviction relief in the state trial court on December 10, 2002, in which he raised the following claims:[12] (1) The indictment was invalid because the state trial court hand selected the grand jury venire under La. Code Crim. P. 413(C).  (2) The state trial court failed properly to examine the competence of the minor witness as required by La. Rev. Stat. Ann. § 15:469. (3) His counsel provided ineffective assistance by failing to file a pretrial motion to quash the indictment based on an improper selection process and by failing to object to the trial court's failure to examine the competence of the minor witness.  The record does not contain a ruling on this application by the state trial court.

Cosse filed a writ application with the Louisiana Fourth Circuit on February 1, 2006, seeking an order directing the state trial court to address his application for post-conviction relief.[13]  The Louisiana Fourth Circuit granted the writ on February 13, 2006,

---

[12]The state court record does not contain a file-stamped copy of this application for post-conviction relief.  A copy of the purported pleading is attached to Cosse's subsequent writ application to the Louisiana Fourth Circuit. St. Rec. Vol. 6 of 7, Application for Post-Conviction Relief (copy signed 12/2/02).  Cosse also submitted to the Louisiana Fourth Circuit a copy of the mail receipt related to the alleged filing of the application.  St. Rec. Vol. 6 of 7, Mail Receipt, dated 12/5/02.  This mail receipt indicates that pleadings were mailed on December 5, 2002 and received by the state district court on December 10, 2002.  The receipt was returned to Cosse on December 13, 2002.

[13]St. Rec. Vol. 6 of 7, 4th Cir. Writ Application, 2006-K-0115, 2/1/06.

and ordered the trial court either to rule on the application or to advise the court if the application could not be located.[14]

On May 4, 2006, Cosse filed another writ application with the Louisiana Fourth Circuit, alleging that he still had not received a ruling from the state trial court.[15]  The day after this filing, May 5, 2006, the state trial court issued a statement that it was unable to locate Cosse's application for post-conviction relief.  As a result, on May 11, 2006, the Louisiana Fourth Circuit denied Cosse's writ application and advised him that he may attempt to re-file the application in the state trial court.

Cosse filed a third writ application with the Louisiana Fourth Circuit on November 27, 2006, alleging that he was unsuccessful in his attempts to gain a post-conviction ruling from the state trial court.[16]  After review of Cosse's claims, the Louisiana Fourth Circuit denied the application and found that Cosse was not entitled to relief.  On October 12, 2007, the Louisiana Supreme Court also denied without reasons Cosse's subsequent writ application filed in that court.[17]

---

[14]St. Rec. Vol. 6 of 7, 4th Cir. Order, 2006-K-0115, 2/13/06.

[15]St. Rec. Vol. 6 of 7, 4th Cir. Writ Application, 2006-K-0507, 5/4/06.

[16]St. Rec. Vol. 6 of 7, 4th Writ Application, 2006-K-1543, 11/27/06.

[17]St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2007-KH-0139, 10/12/07; La. S. Ct. Writ Application, 07-KH-139, 1/27/07 (signed 1/1/07).

II.     FEDERAL HABEAS PETITION

On March 6, 2008, Cosse filed a petition for federal habeas corpus relief in this court raising five grounds for relief:[18] (1) The state trial court erred in denying the motion to suppress the identifications. (2) He is entitled to a new trial because a portion of Bowlston's trial testimony was not recorded or transcribed and therefore was not reviewable on appeal.  (3) The indictment was invalid because the state trial court hand selected the grand jury venire under La. Code Crim. P. art. 413(C).  (4) The state trial court failed properly to examine the competence of the minor witness as required by La. Rev. Stat. Ann. § 15:469. (5) His counsel provided ineffective assistance by failing to file a pretrial motion to quash the indictment based on the improper grand jury selection process and by failing to object to the trial court's failure to examine the competence of the minor witness.

The State filed an opposition in response to Cosse's petition, conceding exhaustion of the claims and timeliness of the petition.[19]  The State argues that the claims are without merit and that Cosse is not entitled to relief.

---

[18]Rec. Doc. No. 1.

[19]Rec. Doc. No. 9.

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[20] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Cosse's petition, which, for reasons discussed below, is deemed filed in this federal court on February 7, 2008.[21]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20

---

[20]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Cosse's petition was filed by the clerk of court on March 6, 2008, when the filing fee was paid.  Cosse signed the petition on February 7, 2008.  This is the earliest date on which he could have delivered the pleadings to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  See Cousin, 310 F.3d at 843 (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

(5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).  The State has not raised any of these preliminary defenses and instead has indicated that Cosse's petition is timely and the claims exhausted.

I question the State's conclusion that Cosse's fourth claim, regarding the state court's failure to examine the minor witness, has been exhausted.  This claim was allegedly raised for the first time in the elusive application for post-conviction relief. Cosse's related writ application to the Louisiana Supreme Court indicates that he raised only two of his three post-conviction claims to that court, specifically the unconstitutionality of La. Code Crim. P. art. 413(C) and ineffective assistance of counsel.[22]  Cosse did not assign as error the claim that the state trial court failed to examine the minor witness.  Nevertheless, the failure to exhaust state court remedies with respect to Cosse's fourth claim would not prevent this court from dismissing the claim on the merits since relief is not warranted.  28 U.S.C. § 2254(b)(2).

IV.   STANDARDS OF A MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

---

[22]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 07-KH-139, p. 1 (Assignments of Error), 1/27/07.  I also note that the State failed to provide a complete copy of the argument portion of this writ application.

11

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from

12

this Court's decisions but unreasonably applies that principle to the facts
of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

## V.   DENIAL OF MOTION TO SUPPRESS IDENTIFICATIONS

Cosse argues that the state trial court erred in denying his motion to suppress the

identifications because the line-ups shown to the children, Janai Bowlston and Joseph

Dedmond, were unduly suggestive.  Cosse alleges that his photograph was the only one

showing "salt and pepper" hair.  He also contends that the witnesses's failure to identify

him by name at the outset taints the reliability of the identification.  He further argues

that Dedmond's photographic identification was unreliable because it was not made until the third photographic line-up shown to him.

These arguments were asserted on direct appeal in the state court. The Louisiana Fourth Circuit issued the last reasoned decision denying the claims as meritless. The appeal court first resolved that the trial testimony did not show any improper suggestions made by the officers during the photographic line-ups. The court also concluded that the photographic line-up shown to Dedmond contained photographs of individuals with relatively similar characteristics, including at least one other person with salt and pepper hair. Furthermore, using the factors outlined in Manson v. Brathwaite, 432 U.S. 98 (1977), the court held that the identifications made by all three witnesses were made within a short period of time after the murder, with adequate opportunity to view Cosse during the crime, and with little if any likelihood for misidentification. This was bolstered by the fact that all three witnesses, Sharon Bowlston, Janai Bowlston, and Joseph Dedmond, identified Cosse by name and without an opportunity to confer before the identifications were made.

In Simmons v. United States, 390 U.S. 377 (1968), the United States Supreme Court set forth a two prong test for the exclusion of identifications based on impermissibly suggestive photo arrays which deny due process. The first prong requires a determination of whether the identification procedure was impermissibly suggestive.

If it is not, the inquiry ends.  If it is, a separate inquiry must be made as to whether, under the totality of the circumstances, the suggestiveness leads to a substantial likelihood of irreparable misidentification.

In <u>Manson v. Brathwaite</u>, 432 U.S. at 114-16, cited by the Louisiana Fourth Circuit, the United States Supreme Court reaffirmed several factors enumerated in <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972), that should be considered when reviewing the reliability of a witness's identification.  These include: (1) the opportunity of the witness to view the subject; (2) the witness's degree of attention; (3) the accuracy of the description; (4) the witness's level of certainty; (5) the elapsed time between the crime and the identification; and (6) the corrupting influence of the suggestive identification itself.  <u>Passman v. Blackburn</u>, 652 F.2d 559, 570-71 (5th Cir. 1981); <u>Herrera v. Collins</u>, 904 F.2d 944, 946 (5th Cir. 1990).

The state trial court held a hearing on Cosse's motion to suppress the identifications and the testimony was reiterated at trial before the jury.  A review of the two transcripts reflects virtually identical testimony from each of the witnesses.

Dedmond testified that, on the morning of the incident, he saw the man he knew as Chris pointing a gun at his mother and Reed in the hallway of their apartment.[23]  He

---

[23]St. Rec. Vol. 5 of 7, Motion Hearing Transcript, pp. 20- 21, 11/12/97; Trial Transcript, Volume 2, pp. 5, 6, 5/20-21/98.

stated that there was nothing preventing him from seeing Chris's face clearly.[24]  He was also peeking into the bedroom when Chris shot Reed.[25]  He was able to give a physical description to the police, including the killer's bushy gray and black hair.[26]  Dedmond testified that he did not provide a name to the officers at the scene because they never asked.[27]

The testimony also indicates that Dedmond did not make an identification in the officers' first two attempts because the pictures were old and did not look like Cosse, because Cosse's hair was cut different and he did not have the burn mark on his face that he had at the time of the murder.[28]  Dedmond later identified a photograph of Cosse from a third line-up shown to him at the hospital.[29]

Janai Bowlston testified that she saw into the bedroom where a man was pointing a gun at her mother.[30]  She said she could see the man's face from where she stood each

---

[24]St. Rec. Vol. 5 of 7, Trial Transcript, Volume 2, p. 10.

[25]St. Rec. Vol. 5 of 7, Trial Transcript, Volume 2, p. 14.

[26]St. Rec. Vol. 5 of 7, Trial Transcript, Volume 2, p. 17.

[27]St. Rec. Vol. 5 of 7, Trial Transcript, Volume 2, p. 17.

[28]St. Rec. Vol. 5 of 7, Motion Hearing Transcript, p. 17; Trial Transcript, Volume 2, pp. 19, 40-41.

[29]St. Rec. Vol. 5 of 7, Motion Hearing Transcript, p. 18; Trial Transcript, Volume 2, p. 21.

[30]St. Rec. Vol. 5 of 7, Trial Transcript, Volume 1, p. 88, 5/20-21/98.

time she approached her mother's bedroom.[31]  She also had seen the man before that morning and knew his name to be Chris.[32]  She selected Chris's picture from the photographs shown to her by police.[33]

The two children were not the only witnesses to the crime.  Sharon Bowlston, their mother, was present throughout the incident and in fact was also a victim of Cosse's shooting.  Bowlston testified that she previously had met Chris Cosse before the morning of the shooting.[34]  She was able to see Cosse as he held a gun to Reed's head and forced both of them back into the bedroom from the hallway and during the confrontation in the bedroom.[35]  Bowlston testified that she was unable at the scene to tell the officer who shot her because her face had gone numb from her gunshot wound.[36]  While still in the hospital, she was able to select Cosse's picture from a photographic line-up.[37]

---

[31]St. Rec. Vol. 5 of 7, Trial Transcript, Volume 1, pp. 92-94.

[32]St. Rec. Vol. 5 of 7, Motion Hearing Transcript, p. 12-13; Trial Transcript, Volume 1, p. 95.

[33]St. Rec. Vol. 5 of 7, Motion Hearing Transcript, p. 8; Trial Transcript, Volume 1, pp. 99-100.

[34]St. Rec. Vol. 5 of 7, Motion Hearing Transcript, p. 26; Trial Transcript, Volume 2, pp. 43-44.

[35]St. Rec. Vol. 5 of 7, Trial Transcript, Volume 2, pp. 44-48, 65-66.

[36]St. Rec. Vol. 5 of 7, Trial Transcript, Volume 2, p. 53.

[37]St. Rec. Vol. 5 of 7, Motion Hearing Transcript, p. 24; Trial Transcript, Volume 2, p. 54.

Considering this testimony and applying the foregoing legal standards, I conclude that there was no suggestive act by police officers during the identification procedures.[38] There was no evidence of undue suggestiveness by law enforcement authorities, and the manner in which Cosse was identified by the witnesses was not impermissibly suggestive.

Even assuming that some indication of suggestiveness existed, a finding this court does <u>not</u> make, there was no substantial risk of misidentification, and federal habeas relief is wholly unwarranted.  In this case, the witnesses had every opportunity to view Cosse at close range in an area of adequate lighting during the incident.  The witnesses knew Cosse and identified him by name to the officers before or during the photographic line-ups.  They each positively identified Cosse from photographs after the incident and again identified him at trial.

In view of the testimony presented and the record as a whole, there was no substantial risk of misidentification as a result of the identification process.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Cosse is not entitled to relief on this claim.

---

[38]St. Rec. Vol. 5 of 7, Motion Hearing Transcript, pp. 9, 19, 25; Trial Transcript, Volume 2, pp. 22, 55; Trial Transcript, Volume 1, 99-101.

VI.    <u>INCOMPLETE TRANSCRIPT</u>

Cosse alleges that he is entitled to a new trial because a portion of Bowlston's testimony was not recorded or transcribed and therefore was not reviewable on appeal. He raised this claim on direct appeal and the claim was found to be meritless by the Louisiana Fourth Circuit, which provided the only reasoned opinion on this issue.

The appeal court determined that the missing portion of Cosse's transcript was not from the case-in-chief.  Instead, the break occurred during Sharon Bowlston's rebuttal testimony.  The defense had attempted to establish that Reed was a drug dealer and that he saw two masked men run out of Reed's apartment when Cosse arrived on the morning of the murder.  Bowlston was called on rebuttal by the State to testify about Reed's work and daily activities.

The court resolved that, during the defense's cross-examination of Bowlston on rebuttal, as indicated in the transcript, the court reporter changed the audio tape which caused a break in the recordation of her testimony.  The court noted that the flow of the testimony indicated that "the interruption was brief."[39]  The court resolved that the testimony also did not bear on Cosse's innocence or guilt but was instead meant to

---

[39]St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2000-KA-0304, p. 10, 1/3/01.

discredit the victim.  The court found "the missing portion of the transcript is an inconsuequential ommission which does not require reversal."[40]

The Supreme Court has held that an indigent defendant is entitled to a free copy of the trial transcript to have a meaningful appeal.  <u>Hardy v. United States</u>, 375 U.S. 277 (1964).  However, the State is not "obligated to automatically supply a complete verbatim transcript," <u>Moore v. Wainwright</u>, 633 F.2d 406, 408 (5th Cir.1980), and a State need not waste its funds providing for free those parts of the transcript that are not "germane to consideration of the appeal."  <u>Draper v. Washington</u>, 372 U.S. 487, 495 (1963).

Louisiana law complies with these constitutional standards.  Appellate review in Louisiana is restricted to questions of law based on defense objections and assignments of error.  <u>State v. Francis</u>, 345 So.2d 1120, 1125 (La.) (citing La. Const. Art. 5, § 5(C) (1974) and La. Code Crim. P. art. 841), <u>cert. denied</u>, 434 U.S. 891 (1977).  Thus, when the transcript and record contain the portions necessary to address the issues actually raised on appeal, including those portions where objections were made by counsel, the record is constitutionally sufficient for a meaningful appeal.  <u>Schwander v. Blackburn</u>, 750 F.2d 494 (5th Cir. 1985).

---

[40]<u>Id</u>.

In this case, the only substantive issue raised by Cosse on direct appeal was the trial court's denial of his motion to suppress the identifications.  As cited above, the record contains transcripts of the pretrial hearing on the motion to suppress held on November 12, 1997, and of the trial testimony related to the identifications.  The trial transcript also contains the testimony from the case-in-chief, when the witnesses testified about Cosse's actions before and during the murder.  The record and transcripts were sufficient for the Louisiana Fourth Circuit to respond to the alleged error raised by appellate counsel and to conduct their review for errors patent on the face of the record.

Furthermore, in this case, Cosse suggests only that he or his appellate counsel were unable to ascertain how long the delay was and unable to review the omitted portion for the existence of possible errors.  The record reflects that the Louisiana Fourth Circuit determined, based on the flow of the questions and answers related to Reed's daily activities, that the delay caused by the tape change was brief and inconsequential.  My review of the transcript does not lead to any other conclusion since the discussion between counsel and Bowlston was still directed to Reed's job and workday routine.[41]

Nevertheless, it is well settled that the State is not "required to furnish complete transcripts so that the defendants . . . may conduct 'fishing expeditions' to seek out possible errors at trial."  Jackson v. Estelle, 672 F.2d 505, 506 (5th Cir.1982).  The law

---

[41]St. Rec. Vol. 5 of 7, Trial Transcript, Volume 2, p. 118, 5/20-21/98.

also does not require a more complete transcript when Cosse is completely unable "to indicate one specific error committed during the portions of trial not included in the record." Cf. United States v. Renton, 700 F.2d 154, 159 (5th Cir.1983).

The record in this case was sufficient for the state courts to review Cosse's appellate grounds for relief.  There is nothing in the record to indicate that the brief break in the recordation of Bowlston's rebuttal testimony in any way affected Cosse's right to a thorough appeal or in any way prevented him from raising a legitimate error for review on appeal.  To warrant federal habeas corpus relief on a claim that state court transcripts are unconstitutionally incomplete, the petitioner must support his claims with more than mere unsubstantiated, transparent speculation.  See Mullen v. Blackburn, 808 F.2d 1143, 1146 (5th Cir.1987); United States ex. rel. Hunter v. Follette, 307 F. Supp. 1023, 1025 (S.D.N.Y.) ("general assertion that omitted portions of the record 'contained most of the . . . trial errors which are reversible,' presents no ground for federal habeas corpus."), aff'd, 420 F.2d 779 (2d Cir.1969), cert. denied, 397 U.S. 1067 (1970).  Cosse has not met this burden.

For the foregoing reasons, the denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  Cosse is not entitled to relief on this claim.

VII.   <u>INVALID INDICTMENT</u>

Cosse argues that the indictment was invalid because the state trial court hand selected the grand jury venire or foreperson under La. Code Crim. P. art. 413(C), which was unconstitutional and discriminatory.  In support of this claim, Cosse alleges that the state courts erred in denying his claim because they failed to follow, or misapplied the holdings in, <u>Campbell v. Louisiana</u>, 523 U.S. 392 (1998), and other federal case law, and that his conviction by illegal indictment violated the Fifth, Sixth and Fourteenth Amendments.

Cosse argues, without evidentiary or documentary support of any kind, that judges in Orleans Parish routinely selected white grand jury forepersons, which demonstrated a discriminatory intent.  Citing La. Code Crim. P. art. 413(C), Cosse contends that the indictment in his case should have been quashed for three reasons: (1) race and gender discrimination in the selection of grand jury foreperson; (2) the grand jury was selected pursuant to impermissible local laws; (3) and improper exclusion of qualified individuals from eligibility to serve on the grand jury.  He also argues that La. Code Crim. P. art. 413(C) violated the equal protection provision of La. Const. Art. III, § 20.

He also vaguely refers to "evidence" submitted in an unrelated case before the Orleans Parish Criminal District Court.  He has not provided copies of any such evidence to this court, and there is no such evidence in the state court record.

Cosse raised this claim in his application for post-conviction relief, which was denied without reasons by the Louisiana Fourth Circuit and the Louisiana Supreme Court.

At the time of Cosse's indictment, La. Code Crim. P. art. 413(C) provided the grand jury selection process for Orleans Parish:

> In the parish of Orleans, the court shall select twelve persons plus a first and second alternate for a total of fourteen persons from the grand jury venire, who shall constitute the grand jury. <u>The court shall thereupon select one of the jurors to serve as foreman</u>.

La. Code Crim. Proc. art. 413(C) (emphasis added) (prior to repeal by Acts 2001, No. 281, §§ 1, 2).

Thus, under the law in effect in Louisiana in 1997, a criminal district court judge selected the foreperson of the grand jury after the grand jury had been impaneled. The Louisiana legislature repealed Article 413(C) in 2001, with the effect that selection of the foreperson in Orleans Parish since that date occurs in the same manner as it now does in the rest of Louisiana.[42]

As to Cosse's argument that Article 413(C) violated the Louisiana Constitution, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus

---

[42]Some lower courts in Louisiana had already held, before the legislature acted, that Article 413(C) was unconstitutional under the Louisiana Constitution because it was an impermissible local law. The Louisiana Supreme Court made the same ruling in 2003 concerning indictments that had been handed down in 1999. <u>State v. Dilosa</u>, 848 So. 2d 546, 551 (La. 2003).

proceeding to review errors under state law." <u>Wilkerson v. Whitley</u>, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).  This court's analysis focuses on federal due process considerations, and due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair.  <u>Neyland v. Blackburn</u>, 785 F.2d 1283, 1293 (5th Cir. 1986).  Thus, the court considers only Cosse's arguments based on federal constitutional law.

Construing his arguments broadly, Cosse suggests that he is entitled to federal habeas review because the state courts' denial of relief was contrary to <u>Campbell v. Louisiana</u>, 523 U.S. at 392, and similar federal case law.  He is not, however, directly entitled to such relief.

In <u>Campbell</u>, the Supreme Court addressed a Louisiana statute, La. Code Crim. P. art. 413(B), which was not applicable to Orleans Parish, where Cosse was prosecuted. Prior to <u>Campbell</u>, La. Code Crim. P. art. 413(B) provided as follows:

> In parishes <u>other than</u> Orleans, <u>the court shall select one person from the grand jury venire to serve as foreman of the grand jury</u>.  The sheriff shall draw indiscriminately and by lot from the envelope containing the remaining names on the grand jury venire a sufficient number of names to complete the grand jury.

La. Code Crim. Proc. art. 413(B) (emphasis added) (prior to amendment by Acts 1999, No. 984, § 1, approved July 9, 1999).  Thus, under the pre-July 1999 law in Louisiana,

> the judge selects the foreperson from the grand jury venire before the remaining members of the grand jury have been chosen by lot. . . .  As a

25

result, when the Louisiana judge selected the foreperson, he also selected
one member of the grand jury outside of the drawing system used to
compose the balance of that body.  These considerations require us to treat
the case as one alleging discriminatory selection of grand jurors.

Campbell, 523 U.S. at 396.  The Louisiana legislature amended Article 413(B) in July

1999 to delete the emphasized language in the quotation above and to provide instead for

random selection of the foreperson from among the already impaneled grand jury

members.  La. Code Crim. Proc. art. 413(B) (as amended by Acts 1999, No. 984, § 1).[43]

Though the Campbell reasoning is informative when addressing Cosse's claim,

the holding of the case addressed a statute which is not the basis of Cosse's grand jury

selection process in Orleans Parish under La. Code Crim. P. art. 413(C).  In fact, the

United States Supreme Court has not addressed the issue of the constitutionality of

Article 413(C).

Instead, it was the Louisiana Supreme Court in State v. Dilosa, 848 So.2d 546 (La.

2003), which addressed the propriety of Article 413(C), two years after the article was

amended by the Legislature.  In Dilosa, the Louisiana Supreme Court determined that La.

C. Crim. P. art. 413(C), as it existed before 2001, failed to provide the procedural

protections required by the Louisiana Constitution.  Id. at 546.  As noted above, Cosse's

claim that Article 413(C) violated the state constitution is not a ground for federal habeas

---

[43]The 1999 amendment applied to all parishes other than Orleans Parish. The article was amended
again in 2001 to delete the exceptions for Orleans Parish. Acts 2001, No. 281, § 1.

corpus relief.  See Parker v. Cain, 445 F. Supp.2d 685, 697 n.23 (E.D. La. Aug. 9, 2006) (Duval, J.); Varnado v. Cain, 2004 WL 2984804 at *5 (E.D. La. Dec. 21, 2004) (Duval, J.).

Instead, "to be entitled to habeas relief [in a case alleging unconstitutional grand jury selection,] a claimant is required to prove discrimination under the standards set out in the Supreme Court's cases." Rideau v. Whitley, 237 F.3d 472, 484-85 (5th Cir. 2000) (emphasis added) (citing Rose v. Mitchell, 443 U.S. 545, 565 (1979)).  The Supreme Court in Campbell, 523 U.S. at 396, emphasized that the criminal defendant must show, as a precondition to raising a third-party due process or equal protection challenge, that he suffered an "injury in fact" from the exclusion of African-Americans from the grand jury.  The Court explained:

> Regardless of his or her skin color, the accused suffers a significant injury in fact when the composition of the grand jury is tainted by racial discrimination.  Discrimination on the basis of race in the selection of members of a grand jury . . . strikes at the fundamental values of our judicial system because the grand jury is a central component of the criminal justice process.

Id., at 398 (quotation omitted).  Furthermore, "[t]o assert the rights of those venirepersons who were excluded from serving on the grand jury in his case, [petitioner] must prove their exclusion was on account of intentional discrimination."  Id.

In the instant case, Cosse has not demonstrated any race or gender[44] discrimination in the selection of the foreperson of the grand jury that indicted him.  In connection with this claim, Cosse has not submitted any documentation or other evidentiary support for his claims.  Based on the record before me, he also failed to present any such support to the state courts.

Instead, Cosse cites to hearings held at the trial level in <u>State v. Trainor</u>, Orleans Case No. 401-182, which was later reported on appeal as <u>State v. Fleming</u>, 846 So.2d 114 (La. App. 4th Cir. 2003).  Cosse references the statistics allegedly introduced into evidence in the <u>Trainor</u>/<u>Fleming</u> case, in which the co-defendants apparently challenged their 1998 indictments on the basis that race discrimination in the selection of grand jury forepersons in Orleans Parish violated their equal protection and due process rights under the United States Constitution.

The Louisiana Fourth Circuit in <u>State v. Fleming</u>, while acknowledging the potential for discriminatory abuse inherent in Article 413(C), ruled that the statistical evidence presented to the trial court concerning the race and gender makeup of the grand juries and jury forepersons from 1987 to 2000 (the same time period that Cosse cites in

---

[44]The United States Supreme Court ruled long ago that exclusion of women from a federal grand jury panel was unconstitutional.  <u>Ballard v. United States</u>, 329 U.S. 187, 195-96 (1946); <u>see also</u> <u>J.E.B.</u> <u>v. Alabama ex rel. T.B.</u>, 511 U.S. 127 (1994) (gender-based peremptory challenges to petit jurors violate the Constitution).

his memorandum) failed to establish a prima facie case of discrimination because the data was incomplete.  Id., 846 So.2d at 122.

Cosse's reliance on the statistics addressed in State v. Fleming suffers from the same incompleteness, which

> make[s] it impossible to determine the disparity between the African Americans [sic] and female forepersons as compared to the African Americans and females in the voter registration population.  Moreover, as the State argues, it is quite possible that "the missing data could prove no disparity at all in the race and gender of the forepersons."  It is important to note that this is not a case in which there were no African American or female forepersons on the grand jury during the relevant period.  Rather, the record reflects (as shown in Defendants' chart from which the statistical data was derived) that the known statistical data showed there were ten African American and eleven female forepersons over the thirteen-year period.

Id., 846 So.2d at 122.

Because Cosse has not established discrimination, the record does not prove that the grand jury was unconstitutionally impaneled or that the indictment was defective. Accordingly, petitioner's claim that the grand jury indictment was unconstitutionally defective lacks merit.  The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.

## VIII.   EXAMINATION OF MINOR WITNESS

Cosse alleges that the state trial court failed properly to examine the competence of the minor witness, Janai Bowlston, as required by La. Rev. Stat. Ann. § 15:469.  Cosse

alleges that, as a result of the trial court's failure to adhere to state law, the jury was allowed to base its verdict on the incompetent testimony of the minor. Cosse raised this claim in his application for post-conviction relief, which was denied without reasons by the Louisiana Fourth Circuit and the Louisiana Supreme Court.

As an initial matter, the statute referenced by Cosse, La. Rev. Stat. Ann. § 15:469, regarding the test of competency for a child under twelve years old, was repealed in 1988 by Acts 1988, No. 515, § 8 (effective January 1, 1989). Thus, by the time of Cosse's prosecution, the law to which he seeks to bind the trial court was not in force. Instead, in § 1 of that same Act, Louisiana adopted La. Code Evid. art. 601, which states simply that "[e]very person of proper understanding is competent to be a witness except as otherwise provided by legislation."

Nevertheless, Cosse's claim is based on the assertion that the state trial court failed to comply with state law. Federal habeas corpus relief may be granted only to remedy violations of the Constitution and laws of the United States; mere violations of state law will not suffice. 28 U.S.C. § 2254; Engle v. Isaac, 456 U.S. 107, 119 (1982). As discussed above, this court's analysis focuses on federal due process considerations, and due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair. Neyland, 785 F.2d at 1293.

Furthermore, the record reflects that, prior to hearing on the motion to suppress the identifications, the state trial court conducted an examination of Janai Bowlston declaring "[t]his is a predicate on the competency issue for her to testify."[45]   After questioning by the court, Cosse's attorney also questioned the child.[46]   Thereafter, the state trial court found her competent to testify.[47]   Cosse's suggestion that the state trial court failed to determine Janai Bowlston's competence to testify prior to trial is factually baseless.

Cosse has failed to present a cognizable federal habeas claim.  He is not entitled to relief on this claim.

## IX.   INEFFECTIVE ASSISTANCE OF COUNSEL

Cosse alleges that he received ineffective assistance because his counsel failed to file a pretrial motion to quash the indictment based on the improper grand jury selection process and failed to object to the trial court's failure to examine the competence of the minor witness.  These claims were first raised in Cosse's application for post-conviction relief, which was denied without reasons by the Louisiana Fourth Circuit and the Louisiana Supreme Court.

---

[45]St. Rec. Vol. 5 of 7, Motion Hearing Transcript, p. 3, 11/12/97.

[46]Id., at p. 5.

[47]Id., at p. 6.

31

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), which the state trial court cited and applied. In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough, however, under

32

Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical

decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591.  The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient.  Id.

A.      FAILURE TO FILE MOTION TO QUASH

Cosse contends that his counsel was ineffective for failing to file a motion to quash the indictment based on race and gender discrimination in the selection process.  He argues that counsel had a duty to challenge the grand jury foreperson's selection through a motion to quash.   The record indicates, however, that at the time of Cosse's prosecution, counsel's failure to file a motion to quash the grand jury indictment was reasonable and not unconstitutionally deficient.

Under Louisiana law, a motion to quash a grand jury indictment may be filed if, among other things, "the manner of selection of . . . the grand jury venire, or the grand jury was illegal."  La. Code Crim. P. art. 533.[48]  In this case, Cosse's counsel filed a

---

[48]La. Code Crim. P. art. 533 provides:
A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:
(1)      The manner of selection of the general venire, the grand jury venire, or the grand

motion to quash the indictment based on issues arising from the death penalty aspect of the first degree murder charge.[49]   The motion did not address the type of discrimination now being alleged by Cosse.

Nevertheless, federal courts have long recognized that the filing of a motion to quash of the type addressed by Cosse is generally a matter of professional judgment left to the discretion of counsel.  Williams v. Beto, 354 F.2d 698, 703 (5th Cir. 1965) (citing Michel v. Louisiana, 350 U.S. 91 (1955)); accord United States v. Lewis, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986).  In Michel, the United States Supreme Court held that the failure of counsel to move to quash the indictment on grounds that the grand jury was unconstitutionally impaneled because of the historical exclusion of African-Americans from the grand jury was not deficient performance per se and was within the range of sound trial strategy, given the facts of the case.  Michel, 350 U.S. at 100.  The same is true in this case.

---

                    jury was illegal.

(2)     An individual grand juror was not qualified under Article 401.

(3)     A person, other than a grand juror, was present while the grand jurors were deliberating or voting, or an unauthorized person was present when the grand jury was examining a witness.

(4)     Less than nine grand jurors were present when the indictment was found.

(5)     The indictment was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury.

[49]St. Rec. Vol. 4 of 7, Motion to Quash Indictment, undated.

As discussed previously, the United States Supreme Court has not declared the Orleans Parish system as it existed under La. Code Crim. P. art. 413(C) to be unconstitutional as it did with Article 413(B) addressed to other parishes.  The Louisiana Supreme Court did not address that issue under state constitutional parameters until the Dilosa case in 2003.  There was no compelling basis for counsel to challenge the grand jury selection process as discriminatory at the time.

In the instant case, the decision of Cosse's counsel not to challenge alleged discrimination against African-Americans or females in the grand jury foreperson selection process was not outside the reasonable discretion afforded counsel.  Therefore, the state courts' denial of relief was not contrary to, or an unreasonable application of, Strickland.  Cosse is not entitled to relief on this claim.

B.      FAILURE TO OBJECT

Cosse alleges that his counsel's performance was ineffective because he did not object to the state trial court's failure to test Janai Bowlston's competence to testify under La. Rev. Stat. Ann. § 15:469.  As discussed above, at the time of Cosse's prosecution, § 15:469 had been repealed and was not the law for testing Bowlston's competence. There was no basis for counsel to rely on that stale provision to voice an objection.

Furthermore, as the record shows, the state trial court did in fact assess Bowlston's competence prior to trial during the pretrial motion hearing held on November 12, 1997. Again, there was no basis for counsel to object since the state trial court had acted.

Counsel's failure to make a frivolous or baseless objection is not deficient performance below an objective level of reasonableness. Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir.1998). The state courts' denial of relief was not contrary to, or an unreasonable application of Strickland. Cosse is not entitled to relief on this claim.

## RECOMMENDATION

The evidence of Cosse's guilt is overwhelming. The state courts committed no constitutional errors during his state court criminal proceedings. For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Chris Cosse for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ___27th___ day of June, 2008.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE